**John F. LEYDEN, Individually and on Behalf of all Other Similarly Situated Air Traffic Control Specialists Employed by the Federal Aviation Administration in the Eastern Region, Plaintiffs,**

v.

**FEDERAL AVIATION ADMINISTRATION and George M. Gary, as Director, Eastern Region, Federal Aviation Administration, Defendants.**

**No. 69–C–1566.**

United States District Court,
E. D. New York.

Aug. 5, 1970.

Catterson & Nolan, Port Jefferson Station, N. Y., for plaintiffs; James M. Catterson, Jr., Port Jefferson Station, N. Y., of counsel.

Edward R. Neaher, U. S. Atty., E. D. New York, for defendants; Cyril Hyman, Asst. U. S. Atty., and Martin J. White, Regional Counsel, F. A. A., of counsel.

## MEMORANDUM AND ORDER

JUDD, District Judge.

In this action for an injunction against alleged improper conduct of disciplinary proceedings by the defendants, a motion was brought on by order to show cause to obtain a preliminary injunction

(a) to prevent defendant George M. Gary from acting as an appeals official in connection with suspensions of the petitioners, and

(b) to prevent the Federal Aviation Administration (F.A.A.) from holding any hearing or inquiry regarding plaintiffs' appeals from disciplinary actions unless seven specific procedural safeguards were afforded, and also for other and further relief.

The action was brought on behalf of plaintiff and other air traffic control specialists employed by F.A.A., who were alleged to be a class. The complaint recited that an F.A.A. official issued fifty or more letters of suspension, ranging from three to fifteen days each, to air traffic controllers working at the New York Air Route Traffic Control Center and the New York Common IFR Room, all charging abuse of sick leave, and that the results of any suspension will become part of the permanent personnel files of each plaintiff. Plaintiffs filed notices appealing their suspensions. Thereafter, defendant Gary appointed ten grievance examiners to conduct informal interviews and transmit findings of fact and recommendations to him as the appeals official. The total loss of pay to plaintiffs from the suspensions is over $10,000.

The complaint recites that the grievance examiners will not permit a verbatim transcript of proceedings before them, will not permit confrontation or cross-examination of witnesses, and may receive evidence from the F.A.A. in the absence of the plaintiffs, and that the final findings will not be available to plaintiffs. Alleging that the decision to suspend the plaintiffs was made by defendant Gary, the complaint asserts that he may not also serve as appeals official. It asserts that the Regulations of the F. A.A. for appeals, and the restrictive procedures proposed by the grievance examiners, deprive plaintiffs of their constitutional right to due process of law.

In addition to asking for an injunction against defendant Gary acting as appeals official, the complaint asks the protection of the following procedural rules:

(a) Recording and transcription of all proceedings;

(b) Production of all witnesses and evidence in support of charges;

(c) Confrontation and cross-examination of such witnesses;

(d) The right of plaintiff to present oral and documentary evidence;

(e) Placing the burden of proof on F.A.A.;

(f) Making the proposed findings and the record available to plaintiffs before it is submitted to the appeals official; and

(g) The right to question the grievance examiner concerning his qualifications and concerning his prior knowledge of the matter.

In support of the order to show cause, plaintiffs' affidavits recite that plaintiff Leyden was treated for gastritis by his personal physician on the evening of June 19, 1970, and was advised to take medication and rest, that he nevertheless reported at 2:30 a. m. because after he reported his illness his watch supervisor stated that he was extremely short-handed; but that he was thereafter given notice of a three-day suspension for "abuse of sick leave" for reporting four hours late and for failing to substantiate that he was incapacitated by sickness. An affidavit of counsel describes an interview with one of the grievance examiners, who told him that his decision would be based in part on private interviews with witnesses, and that he had already examined a file prepared by investigators of the security and compliance branch of the F.A.A. Many other air traffic controllers in the metropolitan area had also reported sick and not available for duty on the same evening, and had turned in medical certificates attesting to their illness. Counsel also recites that the Administrator of the Federal Aviation Administration publicly stated to a group of controllers that he himself had directed the filing of the specific charge which was made.

The only answering paper is an affidavit by defendant Gary reciting that unusually large numbers of employees had failed to report for duty on June 19, 1969 at F.A.A. facilities throughout the country, on the ground that they were ill and not able to work, that he had discussed with his staff a plan for appropriate measures to staff facilities where mass absenteeism required, that he discussed the matter with his counterparts at other regional headquarters, that he knew that the Administrator of F.A.A. had ordered a formal investigation concerning the nature, extent and bona fides of the alleged illnesses, and that he had received reports as to the number of interrogations conducted at the New York Center and the Common IFR Room but not of the facts developed by the interrogations. He recited that he considered that his reviewing the investigators' reports or discussing sanctions with facility chiefs or grievance examiners prior to the reports of the grievance examiners would be incompatible with his responsibilities as the appeals official.

The papers show a sufficient number of persons affected, a sufficiently common interest, and a suitable named plaintiff to justify maintaining the action as a class action. F.R.Civ.P. 23.

Defendants' time to answer the complaint was extended by stipulation for sixty days after February 6, 1970, but no answer has yet been filed; nor have any interrogatories or notices of depositions been filed.

All the suspensions but one have been served, but none of the appeals has yet been considered.

Plaintiff asserts that his three day suspension resulted in a loss of compensation of $187. This would indicate that a thirty day suspension might result in a penalty of from $1,200 to $1,800.

*F.A.A. Appeals Procedures*

The Regulations of the Civil Service Commission provide a specified procedure for suspensions of thirty days or less, 5 C.F.R. Secs. 752.301–304. A different procedure is provided in connection with discharge, suspension for more than thirty days, furlough without pay, and reduction in rank or compensation (5 C.F.R. Secs. 752.201–203) and appeals from such actions (Secs. 771.201–226). The F.A.A. Regulations are modeled on the Civil Service Commission's Regulations for agencies.

In the case of suspensions for thirty days or less the F.A.A. Regulations permit the suspension to take effect immediately (Sec. 203(b) (1)), but provide for an administrative appeal, which gives rise to a "grievance inquiry" by an "impartial grievance examiner" (Secs. 322, 411–13).

The F.A.A. Regulations direct that the grievance examiner must be someone who had no previous connection with the

case, who has received training in conducting grievance inquiries and who is "sufficiently high in the organizational structure to command respect" (Section 413). The grievance examiner is required to familiarize himself with the case through management records and personal interviews with those directly concerned, including either individual or group discussions, as well as from the employee's written request for an inquiry (Sec. 413). The grievance inquiry is to be conducted in "as informal manner as possible consistent with getting the facts." (Sec. 416).

The employee and his representative have the right to make a personal presentation to the grievance examiner (Sec. 416). They may also furnish a list of witnesses they desire, and the examiner will determine which witnesses to hear (Sec. 415(a)). The grievance examiner makes findings of fact and recommendations which he forwards to the appeals official (Sec. 418), who makes a written decision and provides copies for the employee and the official who made the original decision (Sec. 408(e)).

An appeals official, except the Administrator, may not make the final decision on a grievance upon which he made an earlier decision (Sec. 512(b)). The papers reveal a dispute as to whether defendant Gary took part in the decision to suspend any of the plaintiffs. Where an appeals official is ineligible, the regulations (§ 512(b)) provide:

"Such grievances shall be adjudicated by an appeals official at the next higher administrative level."

The procedure outlined above is consistent with the statutory requirements for removal or suspension of persons in the competitive service (5 U.S.C. § 7501(b)). The statute expressly states:

"Examination of witnesses, trial or hearing is not required but may be provided in the discretion of the individual directing the removal or suspension without pay."

Instead of appealing and requesting a grievance inquiry, an employee may appeal the initial suspension to the Civil Service Commission, but the F.A.A. will not accept an appeal if the employee has appealed to the Commission (Sec. 323). An appeal to the Civil Service Commission can be based only on the ground that the F.A.A. has not followed correct procedures or that there has been discrimination on account of political reasons, sex, marital status or physical handicap (Sec. 321(d) (2)).

Thus an employee threatened with a suspension of thirty days or less has the choice of an agency procedure without a hearing or a Civil Service Commission procedure that does not reach the merits.

In case of suspensions for more than thirty days there is a different procedure, with a hearing officer appointed to take testimony, prepare a record and submit findings to the appeals official together with the entire appeal record. See Appendix I to F.A.A. Handbook on Adverse Actions, Appeals, and Grievances.

Still different provisions apply to "preference-eligible" employees, but the complaint does not assert that any of the plaintiffs are in that category. 5 U.S.C. § 7512.

One court has stated, with respect to air traffic controllers, that:

"I do not believe that due process enters into the contract between the United States and its employees." Herriges v. United States, 314 F. Supp. 1352 (D. Mont., July 2, 1970).

While this court does not take so dim a view of a federal employee's rights, it is necessary to examine the restrictions which affect a court's powers.

*Jurisdiction*

■ The action cannot be sustained on the basis of federal question jurisdiction, since 28 U.S.C. § 1331(a) requires that more than $10,000 be in controversy, and this amount cannot be made up by consolidating smaller individual

claims. *Cf.* Snyder v. Harris, 394 U.S. 332, 89 S.Ct. 1053, 22 L.Ed.2d 319 (1969) ; Rosado v. Wyman, 414 F.2d 170, 176–177 (2d Cir. 1969), rev'd. on other grounds, 397 U.S. 397, 90 S.Ct. 1207, 25 L.Ed.2d 442 (1970).

Plaintiffs suggest that jurisdiction may be based on 28 U.S.C. § 1337, relating to actions "arising under any Act of Congress regulating commerce." Whether this section covers the rights of an employee of an agency regulating commerce need not be decided, for there is another basis of jurisdiction, and any obstacles to judicial action would affect section 1337 jurisdiction as well.

■ Plaintiffs also refer to 28 U.S.C. § 1346 as amended, (the Tucker Act), which gives district courts jurisdiction of contract actions, and would include suits to recover compensation owed to employees of the United States. This section may provide review of final action of the agency, but it is not an appropriate basis for an injunction action prior to any final agency decision.

The Administrative Procedure Act remains as the most appropriate basis of jurisdiction. That Act, in 5 U.S.C. § 702, sets forth that any person adversely affected by action of any federal agency is entitled to judicial review. Daub v. United States, 223 F.Supp. 609 (E.D.N.Y.1963). In aid of such review, courts may stay administrative action, 5 U.S.C. § 705. Hamlin Testing Laboratories, Inc. v. United States Atomic Energy Comm., 337 F.2d 221 (6th Cir. 1964).

The government finds an obstacle to A.P.A. review in 5 U.S.C. § 554(a) (2), which excludes the application of that section to cases involving "the selection or tenure of an employee." This does not mean that employees are deprived of all judicial review, but only that they are not entitled to the specific procedural rights in the agency which § 554 affords, in adjudications required by statute to be determined on the record. Significantly, § 554 is part of Chapter 5 of Title 5, headed "Administrative Procedure," while § 702 is part of Chapter 7 of Title 5, headed "Judicial Review."

Other actions against employees have been reviewed, after the employee was given more protection than defendants are said to offer here. Deviny v. Campbell, 90 U.S.App.D.C. 171, 194 F.2d 876 (1952). The case of Barefield v. Byrd, 320 F.2d 455 (5th Cir. 1963), relied on by defendants, really turned on the specific prohibition of judicial review of decisions concerning veterans' benefits. 38 U.S.C. § 211(a).

■ The Supreme Court, moreover, has given a narrow construction to a general prohibition against judicial review, and held that it was not intended to deprive courts of power to correct actions that are plainly illegal. Oestereich v. Selective Service System, 393 U.S. 233, 89 S.Ct. 414, 21 L.Ed.2d 402 (1968). *Cf.* Barlow v. Collins, 397 U.S. 159, 90 S.Ct. 832, 837–838, 25 L.Ed.2d 192 (1970).

■ Moreover, courts will require that agencies live up to their own procedures, and enforce this rule even against the Army. Hammond v. Lenfest, 398 F.2d 705 (2d Cir. 1968) ; *Cf.* Vitarelli v. Seaton, 359 U.S. 335, 540, 79 S.Ct. 968, 973, 3 L.Ed.2d 1012 (1959). Appointment of an ineligible appeals official would be a violation of F.A.A.'s own procedures.

■ Even if jurisdiction exists, the defendants assert that it should not be exercised until administrative remedies have been exhausted. However, the doctrine of exhaustion is not a rigid one. Hammond v. Lenfest, supra, 398 F.2d at 714; Reeber v. Rossell, 91 F.Supp. 108 (S.D.N.Y.1950). In a class action to determine the procedure to be followed by the grievance examiners, there is ground for determining basic rules in advance, without waiting for the final decisions and requiring perhaps fifty separate reviews.

On balancing harm from the granting or denial of a preliminary injunction, the scales tip toward the plaintiff's side. Delay in hearing the appeals will not prejudice the defendants, while the plaintiffs have made an adequate showing of

harm to them, in prosecuting multiple appeals which may be determined under improper procedure. Plaintiffs also have shown enough possibility of success on some or all the issues to permit granting a preliminary injunction.

### Particular Claims Asserted

Plaintiffs' first claim is that they should be afforded a recording or transcription of the proceedings before the grievance examiner. The Court of Claims has upheld the right of a hearing official, in the interest of saving time and money, to decide that a transcript will not be made at government expense, and to substitute a satisfactory summary of the record. Horn v. United States, 177 F.Supp. 438 (1959). Here the plaintiffs are not assured even the right to review a summary of the record.

■ In another district, air controllers have been denied the right to have their own reporter present to make a transcript. Sparks v. Federal Aviation Agency, 305 F.Supp. 673 (E.D. La. 1969); see also Sparks v. United States, 310 F.Supp. 1261 (E.D.La.1970). The theory of that ruling was that the hearing officer was entitled to maintain as much informality as he saw fit. When a $10,000 penalty is visited on a group of men, it is small comfort to be assured that it was done in an informal manner. The First Amendment to the United States Constitution assures the right "to petition the Government for a redress of grievances." In order to make an effective presentation of their grievances, it may be important for plaintiffs to show exactly what took place in the appeals procedure. No reason but administrative whim has been asserted for denying plaintiffs the right to make their own transcription of the appeal proceedings.

Plaintiffs' next three claims, the right to produce their own evidence, to confront witnesses, and to know the evidence against them, are expressly denied by statute. 5 U.S.C. § 7501(b). The conplaint does not expressly challenge the constitutionality of this provision. If it did, it would be necessary to convene a three-judge court to consider the case. 28 U.S.C. § 2282.

Plaintiffs' fifth claim, that the burden of proof should be on F.A.A., has not been directly disputed by defendants. If there is no judicial review, there is no way of telling whether the burden of proof has been sustained, but the issue is not appropriate for decision at this time.

■ Plaintiffs' sixth claim, that they should see the findings and record before they are submitted to an appeals official, relates to a detail of procedure. At some stage, the evidence used to prove the agency's case must be made available to the employee. Greene v. McElroy, 360 U.S. 474, 476, 79 S.Ct. 1400, 1413, 3 L.Ed.2d 1377 (1959). If judicial review is available at the end, any deficiency in the evidence or findings may result in upsetting the determinations. The agency takes that risk, but the court will not at this stage direct that tentative findings must be submitted in every case.

■ Effective administration requires that discipline of employees for minor offenses be not judicialized so far that supervisors will be reluctant to correct infractions. The balance between the constitutional rights of the employee and the needs of prompt discipline must leave some discretion in the employing agency. Where that balance lies in this case cannot be fully determined until defendants have answered the complaint and the issues have been explored.

■ Plaintiffs' final claim is the right to question the grievance examiners concerning their qualifications and their prior knowledge of the matter. This may be accomplished by depositions in this action, and does not require any injunctive relief.

It is therefore ordered

(1) that this action be maintained as a class action;

(2) that defendant George M. Gary be restrained from acting as an appeals official in respect of any of the plaintiffs

until the issues in this action have been determined;

(3) that the defendant Federal Aviation Agency and any grievance examiners acting under its authority be restrained from interfering with the rights of plaintiffs to record and transcribe all proceedings before such grievance examiners, by tape recorder, stenographic or other reasonable means selected by plaintiffs;

(4) that the request for a temporary injunction be denied in all other respects, but without prejudice to plaintiffs' rights to depose the designated grievance examiners;

(5) that defendants' time to answer the complaint be extended until September 15, 1970; and

(6) that the case be set for pretrial conference at 2 p. m. on Thursday, October 8, 1970.